**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| **IN RE: TENOFOVIR DISOPROXIL FUMARATE PRODUCTS LIABILITY LITIGATION** | ) ) ) ) ) | MDL No. 2881 |

**DEFENDANT GILEAD SCIENCES, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

**SIDLEY AUSTIN LLP**
Joshua E. Anderson
janderson@sidley.com
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
Telephone:  (213) 896-6687
Fax:  (213) 896-6600

*Attorneys for Defendant Gilead Sciences, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 3

    A.    Gilead's TDF Medications ................................................................................ 3

    B.    Gilead's TAF Medications ................................................................................ 4

    C.    Movants' Scheduled Actions and Their Allegations ...................................... 5

        1.    *Hills v. Gilead Sciences, Inc.* (M.D. La.) ............................................... 7

        2.    *Pierot v. Gilead Sciences, Inc.* (W.D. La.) ........................................... 8

        3.    *Dechow et al. v. Gilead Sciences, Inc.* (C.D. Cal.) ............................... 8

        4.    *Holley et al. v. Gilead Sciences, Inc.* (N.D. Cal.) ................................. 9

LEGAL STANDARD ....................................................................................................... 10

ARGUMENT ................................................................................................................... 11

    I.    SECTION 1407(a) CENTRALIZATION IS NOT APPROPRIATE ........................... 11

    A.    Movants Have Failed To Show That Centralization Is Necessary For The *Four Federal* Actions Pending In This Litigation ............................................... 11

    B.    Movants Have Failed To Show That Informal Coordination Cannot Be Achieved Through Voluntary Cooperation ...................................................... 14

    C.    Movants' Claims Raise A Host Of Individualized Factual Issues That Would Overwhelm Any Common Issues ...................................................... 15

    II.    IF THE PANEL DETERMINES THAT CENTRALIZATION IS WARRANTED, THEN THE NORTHERN DISTRICT OF CALIFORNIA WOULD BE THE APPROPRIATE TRANSFEREE DISTRICT ................................................... 19

CONCLUSION ................................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re [24]7.AI, Inc.*,
   338 F. Supp. 3d 1345 (J.P.M.L. 2018)...................................................................12

*In re Athena Universal Life II Cost of Ins. Increase Litig.*,
   268 F. Supp. 3d 1354 (J.P.M.L 2017)...................................................................12

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
   528 F. Supp. 2d 1339 (J.P.M.L. 2007)...................................................................16

*In re Benicar (Olmesartan) Prod. Liab. Litig.*,
   96 F. Supp. 3d 1381 (J.P.M.L. 2015)...................................................................16

*In re Bernzomatic & Worthington Branded Handheld Torch Prod. Liab. Litig.*,
   293 F. Supp. 3d 1381 (J.P.M.L. 2018)...................................................................12

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
   804 F. Supp. 2d 1376 (J.P.M.L. 2011)...................................................................11

*In re Boehringer Ingelheim Pharm., Inc., F.L.S.A. Litig.*,
   763 F. Supp. 2d 1377 (J.P.M.L. 2011)...................................................................12

*In re Cessna Aircraft Distrib. Antitrust Litig.*,
   460 F. Supp. 159 (J.P.M.L. 1978)...................................................................16

*In re Cordarone Mktg., Sales Practices & Prod. Liab. Litig.*,
   190 F. Supp. 3d 1346 (J.P.M.L. 2016)...................................................................12, 15, 17

*In re Corvette Z06 Mktg. & Sales Practices Litig.*,
   289 F. Supp. 3d 1348 (J.P.M.L. 2018)...................................................................12

*In re Cymbalta (Duloxetine) Prod. Liab. Litig. (No. II)*,
   138 F. Supp. 3d 1375 (J.P.M.L. 2015)...................................................................12

*In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*,
   780 F. Supp. 2d 1379 (J.P.M.L. 2011)...................................................................16

*In re Express Scripts Holding Co. Sec., Derivative & E.R.I.S.A. Litig.*,
   273 F. Supp. 3d 1369 (J.P.M.L. 2017)...................................................................12

*In re Highway Accident Near Rockville, Conn.*,
   388 F. Supp. 574 (J.P.M.L. 1975)...................................................................10

*In re Linear Gadolinium-Based Contrast Agents Prod. Liab. Litig.*,
   341 F. Supp. 3d 1381 (J.P.M.L. 2018)...................................................................12, 14, 16, 17

*In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig.*,
    38 F. Supp. 3d 1380 (J.P.M.L. 2014) ........................................................14, 15, 18

*In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.*,
    693 F.2d 847 (9th Cir. 1982) ...............................................................................17

*In re Narconon Drug Rehab. Mktg., Sales Practices & Prod. Liab. Litig.*,
    84 F. Supp. 3d 1367 (J.P.M.L. 2015) ........................................................13, 15, 18

*In re NBTY, Inc., Ginkgo Biloba Mktg. & Sales Practices Litig.*,
    100 F. Supp. 3d 1383 (J.P.M.L. 2015) .................................................................14

*In re Patriot Nat'l, Inc., Sec. Litig.*,
    No. MDL 2870, 2018 WL 6437899 (J.P.M.L. Dec. 6, 2018) ................................12

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    173 F. Supp. 2d 1377 (J.P.M.L. 2001) ................................................................16

*In re Photocopy Paper*,
    305 F. Supp. 60 (J.P.M.L. 1969) .........................................................................16

*In re Qualitest Birth Control Prod. Liab. Litig.*,
    38 F. Supp. 3d 1388 (J.P.M.L. 2014) ........................................................12, 14, 19

*In re SFPP, L.P., R.R. Prop. Rights Litig.*,
    121 F. Supp. 3d 1360 (J.P.M.L. 2015) .................................................................13

*In re Teamster Car Hauler Prod. Liab. Litig.*,
    856 F. Supp. 2d 1343 (J.P.M.L. 2012) ................................................................13

*In re Testofen Mktg. & Sales Practices Litig.*,
    96 F. Supp. 3d 1371 (J.P.M.L. 2015) ........................................................11, 12, 19

**Statutes and Rules**

28 U.S.C. § 1404(a) ...................................................................................................2, 6, 14

28 U.S.C. § 1407(a) ....................................................................................... *passim*

Rules of Procedure of the U.S. Judicial Panel on Multidistrict Litigation
    Rule 11.1(c) .............................................................................................................1

**Other Authorities**

15 C. Wright & A. Miller, Federal Practice and Procedure (4th ed. 2013)
    § 3863 .............................................................................................................10, 16
    § 3864 .............................................................................................................19, 20

Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*,
   72 F.R.D. 211 (1976) ...................................................................................................11, 20

*Guidelines for the Use of Antiretroviral Agents in Adults and Adolescents Living
   with HIV*, DEP'T OF HEALTH AND HUM. SERV. (Oct. 25, 2018) .................................1, 4, 18, 19

*WHO Model List of Essential Medicines*, WORLD HEALTH ORG.
   (Mar. 2017, *am.* Aug. 2017) ...............................................................................................1, 4

Defendant Gilead Sciences, Inc. ("Gilead") submits this response in opposition to the Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings ("Transfer Motion") filed by the plaintiffs ("Movants") in *Holley et al. v. Gilead Sciences, Inc.*, No. 3:18-cv-06972-JST (N.D. Cal.) ("*Holley*"). ECF No. 1. The Panel should deny Movants' Transfer Motion.[1]

## INTRODUCTION

Gilead develops and markets life-saving medications, including Viread, Truvada, Atripla, Complera, and Stribild—HIV medications containing the prodrug tenofovir disoproxil fumarate ("TDF"), alone or in combination with other drug ingredients. ***None*** of the plaintiffs in the four federal actions the Transfer Motion seeks to consolidate allege that these medications were ineffective for treating HIV. Nor could they make such allegations. Each of these medications is approved by the U.S. Food and Drug Administration ("FDA") for the treatment and/or prevention of HIV infection; TDF medications are core components of the U.S. Department of Health and Human Services' ("HHS") preferred regimens for HIV antiretroviral therapy;[2] and TDF is designated as an "essential" medicine by the World Health Organization ("WHO").[3]

Rather, plaintiffs allege that they suffered kidney and/or bone injuries as a result of using these medications, and assert claims based on two theories: (1) Gilead should have altered the design of these five medications by replacing TDF with an allegedly superior drug ingredient, tenofovir alafenamide fumarate ("TAF"), and/or by reducing the dose of TDF in Stribild; and

---

[1] Pursuant to Panel Rule 11.1(c), Gilead respectfully requests the opportunity to present oral argument on the Transfer Motion.

[2] *Guidelines for the Use of Antiretroviral Agents in Adults and Adolescents Living with HIV*, DEP'T OF HEALTH AND HUM. SERV., at F-5 (Oct. 25, 2018), http://www.aidsinfo.nih.gov/ContentFiles/AdultandAdolescentGL.pdf.

[3] *WHO Model List of Essential Medicines*, WORLD HEALTH ORG., at 19–21 (Mar. 2017, *am.* Aug. 2017), http://www.who.int/selection_medicines/list/en/.

1

(2) Gilead failed to adequately warn plaintiffs or their physicians about kidney and bone risks from the TDF medications and the need to "monitor" patients for these risks.

The Panel should deny the Transfer Motion because Movants have failed to satisfy their heavy burden of demonstrating that centralization is appropriate for the following three reasons.

*First*, formal centralization is unnecessary because the Transfer Motion involves only *four* federal actions pending in *two* states, a single defendant represented by one law firm, and *two* groups of plaintiffs' counsel. Indeed, one group of plaintiffs' counsel represents nearly 96% of all plaintiffs in a single action that is already pending in the proposed transferee district.

*Second*, Movants have made no showing of duplicative discovery or inconsistent pretrial rulings necessitating centralization under Section 1407. To the contrary, given the small number of actions and counsel, the parties have already been successfully engaging in informal coordination and voluntary cooperation. Due to these efficiencies, perhaps, no party has attempted to pursue any other available alternative to centralization, including a traditional motion for transfer of venue under 28 U.S.C. § 1404(a).

*Third*, plaintiffs' claims present highly fact-specific issues of liability, causation, and damages concerning multiple different medications over different time periods, and those individualized issues will necessarily predominate over any common factual or legal questions.

Centralization should be the last solution after exploring all other options, and, in this litigation, transfer would not serve the convenience of parties and witnesses or promote the just and efficient conduct of the actions. As a result, Movants' Transfer Motion should be denied. Alternatively, if the Panel determines that centralization is appropriate, Gilead agrees that the Northern District of California would be the appropriate transferee district.

## FACTUAL BACKGROUND

### A.   Gilead's TDF Medications

The medications at issue—Viread, Truvada, Atripla, Complera, and Stribild—are each prescription medications developed and marketed by Gilead "for the treatment of Human Immunodeficiency Virus-1 ('HIV') infection." ECF No. 1-6 (*Holley* Complaint) ¶ 1. Each medication is a fixed dose pill containing TDF, a prodrug of the compound tenofovir, alone or combined with one or more other drugs. *Id.* ¶ 4; *see also id.* ¶ 3 & n.2. "Tenofovir is a nucleotide analogue reverse transcriptase inhibitor ('NRTI')," which "work[s] by blocking an enzyme HIV needs to replicate." *Id.* ¶ 2.

Between 2001 and 2012, FDA approved Gilead's five TDF medications, each pursuant to its own unique new drug application. On October 26, 2001, FDA approved Viread, the brand name for TDF, for the treatment of HIV-1 infection in combination with other antiretroviral agents. *Id.* ¶ 189. On August 2, 2004, FDA approved Truvada, a combination of TDF and emtricitabine (another NRTI), for the same use. *Id.* ¶ 190. On July 12, 2006, FDA approved Atripla, a combination of TDF, emtricitabine, and efavirenz (a non-nucleoside reverse transcriptase inhibitor ("NNRTI")), for the treatment of HIV-1 infection, either on its own or in combination with other antiretroviral agents. *Id.* ¶ 191. On August 10, 2011, FDA approved Complera, a combination of TDF, emtricitabine, and rilpivirine hydrocholoride (another NNRTI), also for treatment of HIV-1 infection. *Id.* ¶ 192. On August 27, 2012, FDA approved Stribild, a combination of TDF, emtricitabine, elvitegravir, and cobicistat "for use as a complete regimen for the treatment of HIV-1 infection in treatment-naive adults." *Id.* ¶ 193. Subsequently, FDA approved Viread for treatment of Hepatitis B and Truvada as part of an HIV prevention regimen, known as pre-exposure prophylaxis ("PrEP"). *Id.* ¶ 1 n.1.

3

The FDA-approved labeling for Gilead's TDF medications has *always* warned of bone and kidney risks associated with the use of those drugs. *See, e.g.*, Ex. 2 (original Viread labeling) at iii–iv, x–xii, xvii–xviii; Ex. 3 (original Truvada labeling) at 11, 18–20, 23–24, 28–30, 36–37, 44–46, 49–50, 53–55; Ex. 4 (original Atripla labeling) at 21, 23–25, 28, 38–40, 44, 47–48; Ex. 5 (original Complera labeling) at 1, 4–7, 13–14, 17, 22, 35, 39, 41–42; Ex. 6 (original Stribild labeling) at 1, 3, 6–8, 12, 14, 20–21, 27, 40, 43, 46.[4]

Notwithstanding those disclosed risks, to this day, HHS continues to include TDF, at the strongest recommendation level, in its "Recommended Initial Regimens for Most People with HIV." *Guidelines for the Use of Antiretroviral Agents in Adults and Adolescents Living with HIV*, DEP'T OF HEALTH AND HUM. SERV., at F-5 (Oct. 25, 2018), http://www.aidsinfo.nih.gov/ContentFiles/AdultandAdolescentGL.pdf [hereinafter *HHS Guidelines for Use of Antiretroviral Agents*]. Likewise, the WHO includes TDF on its list of the medicines "deemed essential for addressing the most important public health needs globally." *WHO Model List of Essential Medicines*, WORLD HEALTH ORG., at 19–21 (Mar. 2017, *am.* Aug. 2017), http://www.who.int/selection_medicines/list/en/.

## B.    Gilead's TAF Medications

Like TDF, TAF is also a prodrug of tenofovir. ECF No. 1-6 (*Holley* Complaint) ¶ 194. Plaintiffs' Complaints refer to three Gilead HIV medications containing TAF: Genvoya (TAF, emtricitabine, elvitegravir, and cobicistat), Odefsey (TAF, emtricitabine, and rilpivirine hydrocholoride), and Descovy (TAF and emtricitabine). *Id.* ¶¶ 196–98. FDA approved these three medications on November 5, 2015, March 1, 2016, and April 4, 2016, respectively, all for the treatment of HIV-1 infection. *Id.* FDA has not approved a standalone TAF drug for the

---

[4] For the Panel's convenience, Gilead has highlighted the relevant parts of the labeling.

treatment or prevention of HIV,[5] nor has it approved a medication combining TAF, emtricitabine, and efavirenz for the treatment or prevention of HIV.

### C.   Movants' Scheduled Actions and Their Allegations

Movants' Transfer Motion seeks to consolidate the following five federal civil actions, in which Gilead is the only named defendant:

- *Hills v. Gilead Sciences, Inc.*, No. 3:18-cv-00718-SDD-EWD (M.D. La.) (filed July 26, 2018) ("*Hills*");

- *Pierot v. Gilead Sciences, Inc.*, No. 3:18-cv-00975-TAD-KLH (W.D. La.) (filed July 27, 2018) ("*Pierot*");

- *Smith v. Gilead Sciences, Inc.*, No. 1:18-cv-01906-JEB (D.D.C.) (filed Aug. 14, 2018) ("*Smith*");

- *Dechow et al. v. Gilead Sciences, Inc.*, No. 2:18-cv-09362-AB-GJS (C.D. Cal.) (filed October 19, 2018; removed Nov. 1, 2018) ("*Dechow*"); and

- *Holley et al. v. Gilead Sciences, Inc.*, No. 3:18-cv-06972-JST (N.D. Cal.) (filed Nov. 16, 2018) ("*Holley*").

ECF No. 1 at 1; *see also* ECF No. 1-2. The *Smith* action has been voluntarily dismissed without prejudice, *see Smith* ECF No. 9, reducing the number of pending federal actions subject to this Transfer Motion to four.

As described in more detail below, *see infra* Background C.1–4, all four actions are proceeding in a coordinated and orderly fashion. The parties have been voluntarily cooperating in a professional manner, stipulating to briefing schedules for motions to dismiss and other deadlines for both coordination and scheduling purposes. Sidley Austin LLP ("Sidley") serves as national counsel for Gilead in these matters, with local counsel admitted to practice in Louisiana

---

[5] FDA has approved a standalone TAF medication (Vemlidy) for the treatment of chronic Hepatitis B Virus infection in adults with compensated liver disease. ECF No. 1-6 (*Holley* Complaint) ¶ 199.

who are assisting in the *Hills* and *Pierot* actions.[6] ECF Nos. 1-6, 1-7, 1-9, 1-10. Two groups of lawyers represent all plaintiffs in the four actions: Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), Hilliard Martinez Gonzales LLP ("Hilliard"), and Ben Crump Law, PLLC represent 140 plaintiffs in the *Holley* action. ECF No. 1-6. Michelle Rutherford represents a total of six plaintiffs in the *Hills*, *Pierot*, and *Dechow* actions. ECF Nos. 1-7, 1-9, 1-10.[7]

All four actions are in their early stages. No court has held a scheduling conference, a status conference, or any hearing.[8] No party has produced or received documents or other materials through discovery, although the *Holley* plaintiffs recently served one set of requests for production of documents. No witnesses have been deposed. No court has issued any substantive ruling, let alone inconsistent pre-trial rulings. No party has sought to utilize alternatives to centralization, such as a motion for transfer of venue under 28 U.S.C. § 1404(a).

Plaintiffs' claims raise numerous fact-specific issues that necessarily require individualized inquiries. For example, as explained in further detail below, plaintiffs ingested different medications containing TDF, with different FDA-approved indications, for different purposes. *See* ECF No. 1-6 (*Holley* Complaint) ¶¶ 24–163 (alleging that plaintiffs ingested Stribild, or Stribild plus one or more of the other medications containing TDF, as PrEP or for use

---

[6] Sidley also represents Gilead in three actions pending in the Los Angeles Superior Court: (1) *Lujano et al. v. Gilead Sciences, Inc.*, No. BC702302 (filed May 8, 2018) ("*Lujano*"); (2) *Martinez et al. v. Gilead Sciences, Inc.*, No. BC705063 (filed May 8, 2018) ("*Martinez*"); and (3) *Erik Grim et al. v. Gilead Sciences, Inc.*, No. 18STCV09777 (filed Dec. 27, 2018) ("*Grim*"). The *Lujano*, *Martinez*, and *Grim* actions are all pending before the same judge.

[7] Ms. Rutherford also represents the plaintiffs in the *Lujano* and *Martinez* actions. Salkow Law, APC and The Onder Law Firm represent the plaintiffs in the *Grim* action.

[8] Movants assert that the Middle District of Louisiana "cancelled a scheduling conference pending review by the Panel." ECF No. 1-1 at 7. That assertion is incorrect. On September 20, 2018, Plaintiff Willie Hills, Jr. filed an *ex parte* status report, stating his "position" that a "scheduling conference [is] premature given that service is not yet complete" and that "Defendant has not had the opportunity to participate in the crafting of this status report." *See Hills* ECF No. 5 at 4. The next day, the court cancelled the status conference. *Hills* ECF No. 6.

in treating HIV-1 infection or Hepatitis B). Plaintiffs were prescribed TDF medications at different times and for different lengths of time, which means that the FDA-approved labeling and the available alternative treatments likewise differed over time. *Compare* ECF No. 1-7 (*Dechow* Complaint) at 5 (ingesting Truvada from 2010 to 2016), *with* ECF No. ECF No. 1-9 (*Pierot* Complaint) ¶¶ 2–3 (ingesting Truvada from 2008 to 2009); *see also* ECF No. 1-6 (*Holley* Complaint) ¶¶ 24–163 (ingesting Viread, Truvada, Atripla, Complera, Stribild or some combination of those medications over different intervals). Plaintiffs' medical histories are also unique and, after ingesting different TDF medications for different lengths of time, they allegedly suffered different injuries. *Compare* ECF No. 1-9 (*Pierot* Complaint) ¶ 20 (describing bone mineral density loss, necrosis, and double hip replacement), *with* ECF No. 1-10 (*Hills* Complaint) ¶ 19 (describing kidney disease, sleep problems, swelling, fatigue, and the possibility of high blood pressure, anemia, and bone disease); *see also, e.g.*, ECF No. 1-6 (*Holley* Complaint) ¶¶ 24–163. Illustrating the above-described factual variations, attached hereto as Exhibit 1 is a chart listing each of the plaintiffs, their city and state of residence, the TDF medication(s) they allegedly used, their alleged dates of use, and their alleged injuries.

### 1.    *Hills v. Gilead Sciences, Inc.* (M.D. La.)

On July 26, 2018, Willie Hills, Jr. sued Gilead in the U.S. District Court for the Middle District of Louisiana. ECF No. 1-10 (*Hills* Complaint). Hills alleges that he was diagnosed with HIV in 2001, and that he took Viread for "almost 10 years"—from 2007 to June 2016, when he was diagnosed with kidney disease and promptly stopped taking Viread. *Id.* ¶¶ 2–3, 14, 19. Hills admits that Viread "kept his viral load manageable." *Id.* ¶ 4. Hills also claims that he suffers from sleep problems, swelling in his extremities, fatigue, and kidney pain, and that he may further develop complications like high blood pressure, anemia, and bone disease. *Id.* ¶ 19. Hills

asserts claims for design defect, inadequate warning, and breach of express warranty under the Louisiana Products Liability Act ("LPLA"), and for redhibition. *Id.* ¶¶ 83–114.

On December 18, 2019, Gilead filed a motion to dismiss Hills's claims. *Hills* ECF No. 17. On January 16, 2019, Hills filed his opposition to Gilead's motion. *Hills* ECF Nos. 25, 26. Gilead's reply in support of its motion is due February 6, 2019. *Hills* ECF No. 30. The court has not held any scheduling conference, status conference, or hearing in this action, and the parties have not yet engaged in any discovery.

### 2.   *Pierot v. Gilead Sciences, Inc.* **(W.D. La.)**

On July 27, 2018, Christopher Pierot sued Gilead in the U.S. District Court for the Western District of Louisiana. ECF No. 1-9 (*Pierot* Complaint). Pierot alleges that he was diagnosed with HIV in 2008, and that he ingested Truvada from 2008 to 2009. *Id.* ¶¶ 2–3, 20, 26. Although Pierot admits that Truvada "kept his viral load manageable," he claims that it caused him to develop bone mineral density loss and bone necrosis, and to undergo double hip replacement in 2012. *Id.* ¶¶ 4, 15, 18, 20. Pierot asserts claims for design defect, inadequate warning, and breach of express warranty under the LPLA, and for redhibition. *Id.* ¶¶ 84–115.

On December 18, 2019, Gilead filed a motion to dismiss Pierot's claims. *Pierot* ECF No. 13. On January 16, 2019, Hills filed his opposition to Gilead's motion. *Pierot* ECF No. 18. Gilead's reply in support of its motion is due February 6, 2019. *Pierot* ECF No. 16. The court has not held any scheduling conference, status conference, or hearing in this action, and the parties have not yet engaged in any discovery.

### 3.   *Dechow et al. v. Gilead Sciences, Inc.* **(C.D. Cal.)**

On October 19, 2018, Donald Dechow, Jr., Anthony Evans, Douglas Klein, and Victoria Scott initially sued Gilead in the Los Angeles Superior Court. ECF No. 1-7 (*Dechow* Complaint). Dechow claims he took Truvada from 2007 to 2017, and suffered renal failure, dialysis, and

kidney function monitoring. *Id*. at 5. Evans claims he took Truvada from 2010 to 2016, and suffered complete renal failure and hospitalization. *Id.* Klein claims he has taken Viread since 2003, and suffered bone density loss, necrosis, fractures, and osteopenia. *Id*. at 5–6. Scott claims she has taken Truvada since 2015, and suffered kidney failure, kidney disease, bone density loss, and hospitalization. *Id*. at 6. Plaintiffs assert claims for strict products liability, negligent products liability, breach of implied warranty, and breach of express warranty. *Id.* at 14–19.

On November 1, 2018, Gilead removed the *Dechow* action to the U.S. District Court for the Central District of California. *Dechow* ECF No. 2. On December 5, 2018, the plaintiffs moved to remand the action to the Los Angeles Superior Court. *Dechow* ECF No. 15. Gilead filed its opposition on December 21, 2018, the plaintiffs' filed their reply on January 11, 2019, and the hearing is scheduled for February 1, 2019. *Dechow* ECF Nos. 16, 19. Gilead's deadline to move to dismiss the *Dechow* plaintiffs' Complaint is 30 days after the date of the district court's ruling on plaintiffs' motion to remand. *Dechow* ECF No. 14. The court has not held any scheduling conference, status conference, or hearing in this action, and the parties have not yet engaged in any discovery.

### 4.    *Holley et al. v. Gilead Sciences, Inc.* (N.D. Cal.)

On November 16, 2018, 140 plaintiffs from 30 different states sued Gilead in the U.S. District Court for the Northern District of California in a purported "mass action." ECF No. 1-6 (*Holley* Complaint) ¶¶ 18, 24–163. Plaintiffs allegedly ingested Stribild (or Stribild and one or more of Gilead's other TDF medications) at different times, for different lengths of time, and for different purposes (*e.g.*, HIV, Hepatitis B, or PrEP). *Id.* ¶¶ 22, 24–163, 522. After ingesting Gilead's TDF medications, plaintiffs allegedly suffered various kidney- and bone-related injuries. *Id.* ¶¶ 24–163. Plaintiffs assert claims for strict liability (design defect and failure to warn), violations of numerous state products liability statutes, negligence and gross negligence,

breach of implied warranty of merchantability, fraud by omission, and violation of numerous state consumer protection statutes. *Id.* ¶¶ 389–644.

On January 25, 2019, Gilead filed a motion to dismiss plaintiffs' claims. *Holley* ECF No. 28. Plaintiffs' opposition is due March 11, 2019, Gilead's reply is due April 5, 2019, and the hearing is scheduled for April 25, 2019. *Holley* ECF Nos. 23. The court has not held any scheduling conference, status conference, or hearing in this action, and the parties have not yet engaged in any discovery. However, a case management conference is set for March 13, 2019, *id.*, and plaintiffs recently served their first set of requests for production of documents.[9]

## LEGAL STANDARD

Under 28 U.S.C. § 1407(a), "[w]hen civil actions involving one or more common questions of fact are pending in different districts," the Panel may transfer those actions "to any district for coordinated or consolidated pretrial proceedings." A motion for transfer shall not be granted, however, unless the Panel determines that it would be "for the convenience of parties and witnesses" and would "promote the just and efficient conduct of such actions." *Id.*; *see also In re Highway Accident Near Rockville, Conn.*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) ("Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met."); 15 C. Wright & A. Miller, Federal Practice and Procedure § 3863, p. 464 (4th ed. 2013) [hereinafter Wright & Miller]. The moving party bears the burden of establishing that formal

---

[9] On January 28, 2019, 25 plaintiffs from 10 different states sued Gilead in the Northern District of California. *See Dowdy et al. v. Gilead Sciences, Inc.*, No. 3:19-cv-00481, ECF No. 1 ¶¶ 23–47 (N.D. Cal.) (filed Jan. 28, 2019) ("*Dowdy*"). Plaintiffs allege that their action is "related" to the *Holley* action, which is currently pending in the proposed transferee district. *See id.* ¶ 20. Hagens Berman and Hilliard represent all of the *Dowdy* and *Holley* plaintiffs, and both Complaints raise nearly identical claims based on nearly identical allegations. *Compare id.* ¶¶ 1–17, 273–414, *with* ECF No. 1-6 (*Holley* Complaint) ¶¶ 1–17, 389–644.

centralization is warranted under Section 1407(a). *See In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011).

## ARGUMENT

## I.    SECTION 1407(a) CENTRALIZATION IS NOT APPROPRIATE.

Movants have failed to satisfy their burden of demonstrating that formal centralization is warranted for three reasons: (1) formal centralization is unnecessary because the Transfer Motion encompasses only four actions pending in two states, one defendant represented by one law firm, and two groups of plaintiffs' counsel, with one group of plaintiffs' counsel representing nearly 96% of the plaintiffs; (2) given the minimal number of actions and counsel, and the demonstrated cooperation of parties and counsel to date, Movants have failed to show that coordination cannot be achieved through voluntary cooperation or other means; and (3) plaintiffs' claims raise a host of individualized factual issues that would swamp any common issues. Accordingly, Movants' Transfer Motion should be denied.

### A.    Movants Have Failed To Show That Centralization Is Necessary For The *Four* Federal Actions Pending In This Litigation.

This Transfer Motion encompasses only *four* federal actions pending in four districts in *two* states. *See supra* Background C.1–4. As the Panel has long held, "where only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Testofen Mktg. & Sales Practices Litig.*, 96 F. Supp. 3d 1371, 1372 (J.P.M.L. 2015) (quotation and alteration omitted); *see also* Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214 (1976) [hereinafter *A Look at the Panel*] ("[W]hen only a few actions are proposed for Section 1407 treatment, the parties advocating transfer have a strong burden of persuasion."). The Panel repeatedly has denied centralization where, as here, only a small number of actions are pending.

*See In re Boehringer Ingelheim Pharm., Inc., F.L.S.A. Litig.*, 763 F. Supp. 2d 1377, 1378–79 (J.P.M.L. 2011) (denying centralization of four actions where plaintiffs in three actions shared counsel and, in all actions, common defendant was represented by same firm); *see also Testofen*, 96 F. Supp. 3d at 1372.[10] And, the "mere possibility of future filings" does nothing to change the Panel's "centralization calculus." *See In re Qualitest Birth Control Prod. Liab. Litig.*, 38 F. Supp. 3d 1388, 1389 (J.P.M.L. 2014) (quotation omitted).

Movants have not carried their heavy burden. Centralization is unnecessary for these four actions because there are a "limited number of involved counsel" in the litigation. *See In re Cordarone (Amiodarone Hydrochloride) Mktg., Sales Practices & Prod. Liab. Litig.*, 190 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016). Gilead—the sole defendant in the four actions—has retained Sidley as national counsel, while only two groups of counsel represent all plaintiffs in the litigation. *See supra* Background C. Moreover, one group of counsel represents nearly 96% of all plaintiffs in a case that is already pending in the proposed transferee district. *See supra* Background C.4. Thus, given the limited number of involved counsel, Movants cannot demonstrate that formal centralization is necessary. *See, e.g.*, *In re Linear Gadolinium-Based Contrast Agents Prod. Liab. Litig.*, 341 F. Supp. 3d 1381 (J.P.M.L. 2018) (denying centralization where "plaintiffs in most actions are represented by a single law firm or firms that are working as co-counsel with that firm in other related actions"); *In re Cymbalta (Duloxetine) Prod. Liab. Litig. (No. II)*, 138 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015) (denying centralization where

---

[10] *See, e.g.*, *In re Patriot Nat'l, Inc., Sec. Litig.*, No. MDL 2870, 2018 WL 6437899, at *1 (J.P.M.L. Dec. 6, 2018); *In re [24]7.AI, Inc.*, 338 F. Supp. 3d 1345, 1346 (J.P.M.L. 2018); *In re Bernzomatic & Worthington Branded Handheld Torch Prod. Liab. Litig.*, 293 F. Supp. 3d 1381 (J.P.M.L. 2018); *In re Corvette Z06 Mktg. & Sales Practices Litig.*, 289 F. Supp. 3d 1348, 1349 (J.P.M.L. 2018); *In re Athena Universal Life II Cost of Ins. Increase Litig.*, 268 F. Supp. 3d 1354, 1355 (J.P.M.L 2017); *In re Express Scripts Holding Co. Sec., Derivative & E.R.I.S.A. Litig.*, 273 F. Supp. 3d 1369, 1371 (J.P.M.L. 2017).

"[p]laintiffs in these actions are represented by one or more of four law firms, and [defendant] is represented in virtually all actions by the same law firm"); *In re Narconon Drug Rehab. Mktg., Sales Practices & Prod. Liab. Litig.*, 84 F. Supp. 3d 1367, 1368 (J.P.M.L. 2015) (denying centralization where "[p]laintiffs in all the actions on the motion are represented by common counsel," and defendants "retained liaison counsel to coordinate the litigation").[11]

Although Movants say that transfer would "achieve precisely the type of efficiencies the multidistrict litigation process was designed to generate," ECF No. 1-1 at 13, they fail to demonstrate—let alone explain—why formal centralization is necessary. Movants provide only one example of those purported "efficiencies," suggesting there is a "risk" that "different courts will reach different results" regarding the question of "whether plaintiffs' design defect claims are preempted." *Id.* at 12–13. But Movants have not made any actual showing of inconsistent pre-trial rulings, *see id.* at 8–13, nor, in any event, is the point sufficient to demonstrate that centralization is necessary: "Section 1407 does not, as a general rule, empower the Panel to transfer cases involving only common legal issues." *See In re Teamster Car Hauler Prod. Liab. Litig.*, 856 F. Supp. 2d 1343 (J.P.M.L. 2012) (explaining that common issue of "complete preemption" was insufficient to justify centralization).

Thus, Movants have failed to show that formal centralization is necessary.

---

[11] As explained above, *see supra* note 6, the *Lujano*, *Martinez*, and *Grim* actions are currently pending before the same judge in the Los Angeles Superior Court. All of the state court actions are thus located in one state, where two of the federal actions are also pending. Under these circumstances, "voluntary coordination is a practicable and preferable alternative to centralization." *See In re SFPP, L.P., R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015) (denying centralization where litigation could be informally coordinated between "six involved states").

### B.     Movants Have Failed To Show That Informal Coordination Cannot Be Achieved Through Voluntary Cooperation.

The Panel has recently held that "'centralization under Section 1407 should be the last solution after considered review of all other options.'" *Linear Gadolinium*, 341 F. Supp. 3d at 1381 (quoting *Best Buy*, 804 F. Supp. 2d at 1378). "[V]oluntary coordination" is a "preferable alternative to centralization," particularly where the parties can "employ various alternatives to transfer which may minimize the potential for duplicative discovery and inconsistent pretrial rulings." *Qualitest*, 38 F. Supp. 3d at 1389 (citing *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978)).

Movants neglect these principles, fail to acknowledge that the parties have already achieved coordination and efficiencies in pre-trial proceedings through informal cooperation, and instead seek formal centralization as the *first* solution. Indeed, because all four actions are "in their infancy," the parties have been "well-positioned for informal coordination." *See In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig.*, 38 F. Supp. 3d 1380, 1381 (J.P.M.L. 2014). For example, the parties voluntarily have: (1) coordinated the briefing schedules for Gilead's motions to dismiss in the *Hills* and *Pierot* actions; (2) stipulated to an agreeable briefing schedule for the plaintiffs' remand motion and Gilead's response deadline in the *Dechow* action; (3) stipulated to an agreeable briefing schedule for Gilead's motion to dismiss in the *Holley* action; and (4) begun to discuss case management issues in the *Holley* action in advance of a March 2019 case management conference. *See supra* Background C.1–4. Perhaps because of the parties' demonstrated ability to informally coordinate and cooperate, no party has sought a transfer of venue under 28 U.S.C. § 1404(a). *See In re NBTY, Inc., Ginkgo Biloba Mktg. & Sales Practices Litig.*, 100 F. Supp. 3d 1383 (J.P.M.L. 2015) (recognizing that "[t]ransfer under Section 1404" is a "viable alternative to centralization" where "the litigation is in its infancy").

Given the minimal number of actions, a single defendant represented by a single law firm, the few groups of plaintiffs' counsel, and the parties' demonstrated ability to coordinate informally, Movants have failed to satisfy their burden of showing a need for formal centralization under Section 1407(a). Additionally, Gilead represents its continued willingness to voluntarily cooperate with plaintiffs' counsel and informally coordinate this litigation wherever possible. *See, e.g.*, *Cordarone*, 190 F. Supp. 3d at 1348 (denying centralization where defendants "represented that they stand ready and willing to cooperate and coordinate to avoid unnecessary duplication of discovery and other pretrial matters"); *Narconon*, 84 F. Supp. 3d at 1368 (denying centralization where "counsel for the defendants confirmed their willingness to coordinate with respect to discovery of any common . . . witnesses"); *Mirena*, 38 F. Supp. 3d at 1381 (denying centralization where defendant represented its "willing[ness] to share any overlapping discovery upon entry of an appropriate protective order").

### C.     Movants' Claims Raise A Host Of Individualized Factual Issues That Would Overwhelm Any Common Issues.

Formal centralization will *not* produce discovery efficiencies or prevent inconsistent pre-trial rulings. Movants argue that these four actions "involve numerous common questions of fact," ECF No. 1-1 at 1, and provide a bullet point list of issues about "Gilead's design, testing, labeling, marketing, and promotion of the TDF drugs," *id.* at 8–9, 11. These are *not* "common" issues. Each TDF medication contains different active ingredients and was approved by FDA pursuant to its own unique new drug application, *see supra* Background A, meaning that their "design, testing, labeling, marketing, and promotion" varied from medication to medication. Moreover, these purported common issues—for example, concerning Gilead's research and development of its medications containing TDF—are not sufficiently complex or numerous to justify centralization, particularly given that this litigation involves only four actions against a

single defendant. *See Linear Gadolinium*, 341 F. Supp. 3d at 1381 (denying centralization where movants failed to show that common questions were "sufficiently complex or numerous," even though "most of these actions . . . involve some common factual issues concerning the manufacture, regulatory approval, labeling, and marketing of [the medical product]").

Movants also maintain that the Panel has previously granted centralization in "similar pharmaceutical product liability suits because they involved these type[s] of common issues." ECF No. 1-1 at 9–10 & n.25. But the presence of some common factual questions "seldom is sufficient, by itself, to justify granting [a] motion to transfer." 15 Wright & Miller, § 3863 at p. 468; *see also In re Cessna Aircraft Distrib. Antitrust Litig.*, 460 F. Supp. 159, 161–62 (J.P.M.L. 1978) ("While we recognize the existence of common questions of fact . . . , a mere showing that such questions exist is not sufficient, in and of itself, to warrant transfer by the Panel."); *In re Photocopy Paper*, 305 F. Supp. 60, 61 (J.P.M.L. 1969) ("[T]ransfer for coordinated or consolidated pretrial proceedings is not mandated by a finding that common questions of fact permeate the actions."). Indeed, the cases that Movants cite are distinguishable because they involved numerous actions, complex issues, and/or various other factors that are not present here. *See, e.g.*, *In re Benicar (Olmesartan) Prod. Liab. Litig.*, 96 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015) (involving "more than 35 actions pending in 23 districts," "complex[]" issues, and "at least some foreign discovery"); *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 780 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011) (involving at least 35 actions); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 528 F. Supp. 2d 1339, 1340 & n.1 (J.P.M.L. 2007) (involving at least 28 actions); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379–80 (J.P.M.L. 2001) (involving at least 14 actions, along with a wide "range of locations of parties and witnesses" and "geographic dispersal" of actions).

Moreover, Movants scarcely acknowledge that their purportedly "common" claims—concerning alleged design defect, failure to warn, negligence, and breach of warranty—present highly fact-specific issues with individualized inquiries that predominate over any common ones. *See In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982) ("[O]n the issues of negligence, strict products liability, adequacy of warnings at relevant time periods, breach of warranty, fraud and conspiracy, *commonality begins to be obscured by individual case histories*." (emphasis added)). For instance, plaintiffs ingested different medications with different ingredients at different times for different approved indications—*e.g.*, Viread, Truvada, Atripla, Complera, or Stribild (or some combination thereof) as PrEP or for use in treating HIV or Hepatitis B. *See* Ex. 1; *see also Linear Gadolinium*, 341 F. Supp. 3d at 1381 (denying centralization where "the injuries alleged in each case appear to be highly plaintiff-specific" because the medical products "involv[ed] different formulations").[12]

Other plaintiff-specific issues abound in this litigation. For example, plaintiffs also ingested TDF medications at different times and for different lengths of time, *see* Ex. 1, which means that the relevant FDA-approved labeling likewise varied both from medication to medication and over time, *see* Exs. 2–6; *see also Cordarone*, 190 F. Supp. 3d at 1348 (denying centralization where plaintiffs alleged they "did not receive an FDA-required Medication Guide

---

[12] Movants concede that plaintiffs "ingested different TDF drugs," but argue that this "does not defeat . . . commonality" because these actions concern "a drug substance that is a component of different drug products." ECF No. 1-1 at 10 & n.26. Movants miss the point. Even assuming this litigation involves some common issues concerning Gilead's research and development of its TDF medications, Movants have failed to show that such issues are "sufficiently complex or numerous" to justify centralization. Moreover, as explained above, Gilead's TDF medications contain different formulations of different combinations of drugs and are indicated for different uses with different regulatory histories. *See supra* Background A. Under such circumstances, there is little commonality as to the medications, and Movants' individual medical and treatment histories will overwhelm any purported commonality. *See Linear Gadolinium*, 341 F. Supp. 3d at 1381.

with their . . . prescriptions" because "[t]he very nature of these allegations . . . mandate a unique inquiry," *i.e.*, the drugs were "dispensed at different times and at different locations").

Plaintiffs have also allegedly suffered (a) different bone-related injuries, ranging from low bone density to bone fracture, (b) different kidney-related injuries, ranging from high levels of creatinine to kidney failure, and (c) other complications, ranging from facial cuts to death. *See* Ex. 1. Those factual variations also warrant denial of centralization. *See Mirena*, 38 F. Supp. 3d at 1381 (denying centralization where plaintiffs' alleged symptoms were "nonspecific," which created "a fact-intensive inquiry over whether each plaintiff was properly diagnosed").

Plaintiffs also will have unique medical histories and, thus, their treating physicians necessarily had unique reasons for prescribing one or more of the TDF medications. *See Narconon*, 84 F. Supp. 3d at 1367–38 (denying centralization where actions "involve[d] significant case-specific facts" about treatment program, *e.g.*, "the specific representations . . . made to each plaintiff, the conditions at the different facilities attended by the plaintiffs at different times, and the widely varying injuries allegedly suffered"). Moreover, different alternative treatments were available to plaintiffs at different times and would have been recommended based on different clinical scenarios. *See supra* Background A–B; *see also HHS Guidelines for Use of Antiretroviral Agents*, *supra*, at F-1 ("More than 30 antiretroviral (ARV) drugs in seven mechanistic classes are [FDA]-approved for treatment of HIV infection.").[13] For some plaintiffs, Gilead's TAF medications were not yet available and for others alternative

---

[13] *HHS Guidelines for Use of Antiretroviral Agents*, *supra*, at F-5 ("Selection of a regimen should be individualized based on virologic efficacy, potential adverse effects, childbearing potential and use of effective contraception, pill burden, dosing frequency, drug-drug interaction potential, comorbid conditions, cost, access, and resistance test results.").

treatment regimens may have been clinically unwarranted.[14] *See Qualitest*, 38 F. Supp. 3d at 1389 (denying centralization where "individualized facts" regarding injury and causation "predominate[d] over the common factual issues"). Finally, plaintiffs have alleged varying personal and economic damages, which, by definition, are unique to their individual claims.

Accordingly, because the individualized factual issues raised by plaintiffs' claims would overwhelm any common issues, centralization should be denied.[15]

## II.   IF THE PANEL DETERMINES THAT CENTRALIZATION IS WARRANTED, THEN THE NORTHERN DISTRICT OF CALIFORNIA WOULD BE THE APPROPRIATE TRANSFEREE DISTRICT.

Movants have *not* met their heavy burden of establishing that formal centralization is warranted under Section 1407(a). *See Testofen*, 96 F. Supp. 3d at 1372. However, if the Panel nevertheless determines that centralization is justified, then Gilead agrees with Movants that the Northern District of California would be the appropriate transferee district.

The Panel's choice of transferee district "must be made in consonance with the underlying statutory goal of Section 1407(a)." 15 Wright & Miller, § 3864 at p. 507. That decision—*i.e.*, where to transfer actions for coordinated or consolidated pretrial proceedings—is

---

[14] *HHS Guidelines for Use of Antiretroviral Agents*, *supra*, at D-1 ("Considerations when selecting an ARV regimen for an individual patient include potential side effects, patient comorbidities, possible interactions with concomitant medications, results of pretreatment genotypic drug resistance testing, and regimen convenience."); *id.*, at F-9 (explaining the risk of "[abacavir] hypersensitivity, a potentially fatal reaction, [that] is highly associated with the presence of [a genetic variation of the] HLAB*5701 allele").

[15] The *Dowdy* action does not change foregoing analysis, and, if anything, confirms that formal centralization is not proper. Even considering the *Dowdy* action, this litigation involves only a handful of actions, pending in two states, against a single defendant represented by one law firm. Two groups of plaintiffs' counsel—Hagens Berman and Hilliard—now represent over 96% of all plaintiffs in cases already pending in the proposed transferee district. Given the small number of actions and counsel, the parties are still capable of engaging in informal coordination and voluntary cooperation. And significantly, the *Dowdy* plaintiffs' claims only introduce additional highly fact-specific issues of liability, causation, and damages concerning multiple different medications over different time periods. *See Dowdy* ECF No. 1 ¶¶ 23–47.

"a balancing test based on the nuances of a particular litigation." Cahn, *A Look at the Panel*, 72 F.R.D. at 214. Among other things, the Panel considers the following factors when selecting a transferee district: (1) the "location of a majority of the relevant documents and witnesses"; (2) the "forum where more actions are pending than in any other single district"; and (3) the "preferences of the parties." *Id.* at 214–15; *see also* 15 Wright & Miller, § 3864 at pp. 509–13 (explaining that the Panel considers various "common sense" factors, including "the location of evidence," "the district in which the largest number of potential transferor cases is pending," and "the preference of the parties").

These three factors suggest that the Northern District of California would be the appropriate transferee district because it serves the "convenience of parties and witnesses" and promotes the "just and efficient conduct" of the litigation. *See* 28 U.S.C. § 1407(a). *First*, Gilead's principal place of business is in Foster City, California, which is located in the Northern District of California. ECF No. 1-6 (*Holley* Complaint) ¶ 164. Because the Northern District of California embraces Gilead's corporate headquarters, it is likely that relevant documents and witnesses will be located there. *Second*, as noted above, nearly 96% of plaintiffs are parties to the *Holley* action. *See supra* Background C.4. Thus, between these four actions, the vast majority of plaintiffs' claims are already pending in a single proceeding located in the Northern District of California. *Third*, lead counsel for all parties to these four actions—*i.e.*, Sidley, Hagens Berman, and Ms. Rutherford—have offices in California or on the West Coast. *See supra* Background C. The Northern District of California is therefore a convenient and accessible forum.

## CONCLUSION

For the foregoing reasons, Movants' Transfer Motion should be denied. If the Panel determines, however, that Movants have satisfied their heavy burden under Section 1407(a), then the Northern District of California would be the appropriate transferee district.

Date:  January 30, 2019                    Respectfully submitted,

By: /s/ *Joshua E. Anderson*
      Joshua E. Anderson
      SIDLEY AUSTIN LLP
      555 West Fifth Street, Suite 4000
      Los Angeles, CA  90013
      Tel:  (213) 896-6687
      Fax:  (213) 896-6600
      Email:  janderson@sidley.com

      *Attorneys for Defendant Gilead Sciences, Inc.*